Antoinette C. TAYLOR, Appellant

v.

James Chesnut MAXSON, Esq., Individually in His Official Capacity As An Attorney and Policy Advisor of the Kentucky Education and Workforce Development Cabinet, Employee and State Actor Under Color of Any Statute, State or Territory, Inclusive, Appellee

NO. 2014–CA–000743–MR

Court of Appeals of Kentucky.

RENDERED: FEBRUARY 19, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: Antoinette C. Taylor, Pro se, Shelbyville, Kentucky

BRIEF FOR APPELLEE: Jacob C. Walbourn, Assistant Attorney General, Frankfort, Kentucky

BEFORE: COMBS, JONES, AND MAZE, JUDGES.

## OPINION

JONES, JUDGE:

This appeal arises out of the Franklin Circuit Court's order dismissing the Appellant's claims on the basis of Governmental Immunity and Qualified Official Immunity. We affirm, albeit, for slightly different reasons than those articulated by the circuit court.[1]

## I.

In July of 2013, the Appellant, Antoinette Taylor, requested the Education and Workforce Development Cabinet ("the Cabinet") to provide her with various documents. Taylor requested the documents under Kentucky's Open Records Act, KRS[2] 61.870 et seq. The Appellee, James Chesnut Maxson, an attorney and policy advisor for the Cabinet, was tasked with responding to Taylor's requests. Maxson did not tender a substantive response to Taylor within three days as required by KRS 61.880. Instead, Maxson, acting on behalf of the Cabinet, told Taylor that the Cabinet would review her requests and "expect[ed] to be able to respond . . . within ten (10) working days from the date of the letter."

Dissatisfied with the Cabinet's action, Taylor filed an Open Records Act appeal with the Kentucky Attorney General. The Attorney General found in Taylor's favor with respect to some of her requests. Thereafter, Taylor, acting without the assistance of counsel, filed this action in Franklin Circuit Court. In her complaint, Taylor seeks to hold Maxson liable in both his official and individual capacities for his alleged willful failure to respond to her requests as well as his alleged intentional misstatements to the Kentucky Attorney General during Taylor's appeal.

Maxson moved to dismiss the complaint on the basis that no claims could be maintained against him in his official capacity as such claims are barred by the doctrine of sovereign immunity and further, that any claim against him in his individual capacity was barred by the doctrine of qualified official immunity. The matter was fully briefed and oral argument was held before the trial court. The trial court ultimately sustained Maxson's motion to dismiss with respect to Taylor's complaint on April 14, 2014. This appeal followed.

## II.

The standard for granting a motion to dismiss pursuant to Kentucky Rules of Civil Procedure (CR) 12.02 is well known:

> The court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim. In making this decision, the circuit court is not required to make any factual determination; rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?

*James v. Wilson*, 95 S.W.3d 875, 883–84 (Ky.App.2002) (internal quotations and footnotes omitted). Because the circuit court dismissed the action on Maxson's motion to dismiss, pursuant to CR 12.02, for failure to state a claim upon which relief can be granted, our focus is on the complaint. As our standard of review re-

---

1. "[W]e, as an appellate court, may affirm the trial court for any reason sustainable by the record." *Kentucky Farm Bureau Mut. Ins. Co. v. Gray,* 814 S.W.2d 928, 930 (Ky.App. 1991).

2. Kentucky Revised Statutes.

quires, for purposes of considering the trial court's granting of Appellee's motion to dismiss, we assume the facts alleged by Appellant are true. *Huie v. Jones,* 362 S.W.2d 287, 288 (Ky.1962).

A court should not grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to CR 12.02 "unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Pari–Mutuel Clerks' Union of Kentucky v. Kentucky Jockey Club,* 551 S.W.2d 801, 803 (Ky. 1977). Because we are concerned only with whether the complaint states a cause of action, and not liability, our decision necessarily depends on the allegations made in the complaint. *See Smith v. Isaacs,* 777 S.W.2d 912, 915 (Ky.1989).

### III.

The circuit court found that to the extent Taylor pled facts in her complaint sufficient to allege a cause of action against Maxson in his official as well as in his individual capacity, such claims were barred by the defense of immunity. We examine each below.

### *Governmental Immunity*

■ Governmental immunity is "a policy-derived offshoot of sovereign immunity," *Caneyville Volunteer Fire Dept. v. Green's Motorcycle Salvage, Inc.,* 286 S.W.3d 790, 801 (Ky.2009), that seeks to protect government agencies and entities from liability. *Yanero v. Davis,* 65 S.W.3d 510, 517 (Ky.2001). Under the doctrine of governmental immunity, "a state agency [or entity] is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary, function." *Id.* Simply put, while a county government is wholly immune from suit, immunity is a conditional

status for a government agency or entity that turns on whether the agency or entity is performing an essential government function. *Caneyville,* 286 S.W.3d at 804.

■ Taylor's suit against Maxson in his official capacity is essentially a suit against the Cabinet. The Cabinet is irrefutably an agency of the Commonwealth. "Where sovereign immunity exists by reason of the constitution, the General Assembly may extend or limit waiver as it sees fit." *Caneyville,* 286 S.W.3d at 805–06. With respect to violations of the Open Records Act, the Commonwealth has only partially waived its immunity. KRS 61.882(5) provides:

> Any person who prevails against any agency in any action in the courts regarding a violation of KRS 61.870 to 61.884 may, upon a finding that the records were willfully withheld in violation of KRS 61.870 to 61.884, be awarded costs, including reasonable attorney's fees, incurred in connection with the legal action. If such person prevails in part, the court may in its discretion award him costs or an appropriate portion thereof. In addition, it shall be within the discretion of the court to award the person an amount not to exceed twenty-five dollars ($25) for each day that he was denied the right to inspect or copy said public record. Attorney's fees, costs, and awards under this subsection shall be paid by the agency that the court determines is responsible for the violation.

*Id.*

This waiver is very limited. It provides a set amount of damages that a court *may award* where a prior determination has been made that the agency willfully violated KRS 61.884. Nowhere in KRS 61.882 or anywhere else in our statutes is there an indication that the Commonwealth has

waived its immunity for the type of claims alleged by Taylor in the instant lawsuit.

Because the Commonwealth has not waived its governmental immunity for the type of conduct and damages sought by Taylor in this action, tort-based damages for emotional distress as a result of outrageous conduct, we must conclude that the circuit court properly dismissed her official capacity claim. Additionally, we observe that from the record it appears that Taylor has filed a separate action in circuit court that relates directly to her open records request. Any damages pursuant to KRS 61.882 to which Taylor may be entitled would be covered by that suit.

### Individual Capacity Claim

■■■■ The doctrine of qualified official immunity shields public officers and employees sued in their individual capacities from liability for the negligent performance of discretionary acts when the actions are undertaken in good faith and within the scope of the official's authority. *Nelson Co. Bd. Of Educ. v. Forte* 337 S.W.3d 617 (Ky.2011). However, qualified official immunity does not protect public employees from liability for the negligent performance of ministerial acts. *Id.*

One of Taylor's allegations against Maxson is that he failed to respond to her request within the mandatory three days required by the Open Records Act. Under KRS 61.880(1):

If a person enforces KRS 61.870 to 61.884 pursuant to this section, he shall begin enforcement under this subsection before proceeding to enforcement under

subsection (2) of this section. Each public agency, upon any request for records made under KRS 61.870 to 61.884, shall determine within three (3) days, excepting Saturdays, Sundays, and legal holidays, after the receipt of any such request whether to comply with the request and shall notify in writing the person making the request, within the three (3) day period, of its decision. An agency response denying, in whole or in part, inspection of any record shall include a statement of the specific exception authorizing the withholding of the record and a brief explanation of how the exception applies to the record withheld. The response shall be issued by the official custodian or under his authority, and it shall constitute final agency action.

KRS 61.880.

Taylor asserts that the three-day period prescribed in KRS 61.880(1) is an absolute deadline, and thus compliance with that deadline constitutes a ministerial act. This may well be the case;[3] however, the question of whether compliance with this portion of the act is ministerial or discretionary has not yet been decided by our appellate courts. And, we need not decide it today because it is clear to us that the General Assembly expressly provided that any damages awarded for violations of the Open Records Act "shall be paid by the agency that the court determines is responsible for the violation." KRS 61.882(5). This statement is a clear indication that the General Assembly intended suits based on violations of the Open Records Act, including the time provisions of

---

**3.** In *Commonwealth v. Chestnut,* 250 S.W.3d 655, 664 (Ky.2008), our Supreme Court noted that "Kentucky's Open Records Act gives public agencies a mere three days, excluding weekends and legal holidays, to respond to open records requests." It further observed that any relief from this onerous time require-

ment "must come from the General Assembly in the form of restricting access to public records, extending the time period for state agencies to respond to open records requests, or providing necessary additional funds to allow state agencies to comply timely and fully with open records requests." *Id.*

KRS 61.880(1), to be brought against the state agencies themselves and not against the individuals employed by those agencies. *See, e.g., Cabinet for Families & Children v. Cummings,* 163 S.W.3d 425, 431 (Ky.2005). Therefore, Taylor cannot pursue an individual claim against Maxson predicated on his failure (willful or otherwise) to comply with the deadlines set out in the Kentucky Open Records Act. The statute expressly limits her to filing a suit against the agency.

 With respect to Maxson's other actions, specifically the content of his response to the Attorney General action, those actions are discretionary, and therefore, immune from suit. Nothing in the Open Records Act sets out how an agency is required to respond to the Attorney General as part of a records appeal. Further, to the extent Taylor's claim against Maxson is based on statements he made to the Attorney General after Taylor appealed to that agency, his statements would be immune from suit. The Kentucky Open Records Act provides for an "adjudicatory process" where an individual who receives an unsatisfactory response to an open records request may appeal to the Attorney General. At the conclusion of the process, the Attorney General issues an opinion, which if not appealed to the circuit court, has the "force and effect of law and shall be enforceable in the Circuit Court of the county where the public agency has its principal place of business or the Circuit Court of the county where the public record is maintained." KRS 61.880(5)(b). The statements by Maxson, which Taylor alleges caused her emotional distress, were made as part of this "adjudicatory process" before the Attorney General. Accordingly, the statements are entitled to absolute judicial immunity.[4] *Schmitt v. Mann,* 291 Ky. 80, 163 S.W.2d 281, 283 (Ky.1942) ("The prevailing rule and the one recognized in this jurisdiction is that statements in pleadings filed in judicial proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry, though it is claimed that they are false and alleged with malice.").

### IV.

For the reasons set forth above, we affirm the Franklin Circuit Court.

ALL CONCUR.

---

4. The statements in this case were made as part of a statutorily well-defined adjudicatory process before the Attorney General. In this adjudicatory process, the attorney general acts in a quasi-judicial capacity. This distinguishes the statements at issue from statements made to the Attorney General in an investigatory setting only. See *Stilger v. Flint,* 391 S.W.3d 751, 754 (Ky.2013), as corrected (Mar. 12, 2013).